UNITED STATES of America, Appellee,

v.

Arthur ANAGNOS,
Defendant, Appellant.

No. 87–1690.

United States Court of Appeals,
First Circuit.

Heard Feb. 4, 1988.
Decided March 30, 1988.

Andru H. Volinsky with whom Shaheen, Cappiello, Stein & Gordon, Dover, N.H., was on brief for defendant, appellant.

David Vicinanzo, Asst. U.S. Atty., with whom Richard V. Wiebusch, U.S. Atty., and Peter E. Papps, Asst. U.S. Atty., Concord, N.H., were on brief for appellee.

Before COFFIN and BREYER, Circuit Judges, and ALDRICH, Senior Circuit Judge.

## AMENDED OPINION

BAILEY ALDRICH, Senior Circuit Judge.

Defendant Arthur Anagnos was found guilty of possession of a controlled substance with intent to distribute, and of conspiracy to distribute, 21 U.S.C. §§ 841(a)(1) and 846, but after verdict and before sentencing he jumped bail and fled the state. Ultimately apprehended, he was sentenced for the original offenses. Prior to sentenc-

ing he had been indicted for the bail jumping, and after the sentencing he pleaded guilty to that offense and received an on-and-after sentence. He is now serving the first, and appeals from those convictions.

■ The government moves to dismiss the appeal because of defendant's bail jumping, asking us to extend our decision in *United States v. Puzzanghera*, 820 F.2d 25 (1st Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 237, 98 L.Ed.2d 195 (1987), where we dismissed an appeal because of defendant's escaping jail after the appeal had been taken. In light of the fact that Puzzanghera had been recaptured prior to the appeal being reached for argument, our decision went beyond *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) where the absconding defendant was still at large. While *Molinaro* has been read as based on the defendant's being outside the reach of the court's writ, actually the Court's brief opinion spoke of the defendant's conduct as "disentitling" him to pursue his appeal without suggesting the limits of the principle. In *Puzzanghera* we pointed out that even though defendant had been recaptured, he still had chosen self-help and shown contempt for our process, and we were unwilling to give him any greater consideration than Molinaro merely because he was back in custody, no credit to him.

Absconding before sentence is another matter. It is true that the Eleventh Circuit has held that such a defendant has, equally, in effect waived his right of appeal from his conviction, *United States v. Holmes*, 680 F.2d 1372 (11th Cir.1982), *cert. denied*, 460 U.S. 1015, 103 S.Ct. 1259, 75 L.Ed.2d 486 (1983), the court saying that to distinguish fleeing before sentence and after taking an appeal "would fly in the face of common sense and sound reason." 680 F.2d at 1374. We think, however, that *Puzzanghera* goes to the limit. Anagnos' misconduct was in the district court, and should affect consequences in that court,

not in ours. Nor do we understand the logic of the Eleventh Circuit, which would hold a defendant fleeing during trial unable to appeal errors in his conviction, but able to appeal irregularities in the sentence imposed after recapture. *See United States v. London*, 723 F.2d 1538, 1539 (11th Cir.) (2–1 decision), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2684, 81 L.Ed.2d 878 (1984). The government's motion to dismiss is denied.

Turning to the merits, defendant's claim that the court was unwarranted in finding a conspiracy that permitted the introduction of declarations of a co-conspirator does not merit discussion. Some procedural matters, however, do.

Realizing that the case against him was, in considerable part, dependent on government agents and police officers, defendant requested that the following question be put to prospective jurors.

Do any of you feel that a witness who is a police officer or a special agent is more likely to testify truthfully than a civilian witness?

The court stated it did not ask such a question, indicating that this was a matter of practice rather than of discretion.[1] Instead, it gave the following,

Are any of you police officers—I'll talk to all of you at the end, all right, if there's some reason why you can't sit— are any of you police officers, former police officers, police commissioners, former police commissioners, or have anything at all to do with law enforcement?

We find ourselves with something of a problem. In *United States v. Pappas*, 639 F.2d 1 (1st Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981), the defendant, knowing that government representatives were going to testify, asked that prospective jurors have put to them on the voir dire essentially the same question that defendant sought here. The court refused, but posed others. On review, after citing circuits elsewhere, we held that the refusal was error, but

---

1. "No. 5 I don't give." While this may have meant, "I don't give in this case," the fact that the government assented to defendant's request, and no factual inquiry was made by the court, suggests that this was a customary ruling. Even *Therrien v. Vose*, post, calls for exercise of discretion in this area.

adopted the standard expressed in *United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979), that whether it was reversible error

> hinges upon such factors as the importance of the government agent's testimony to the case as a whole; the extent to which the question concerning the venire person's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury; the extent to which the credibility of the government agent-witness is put into issue; and the extent to which the testimony of the government agent is corroborated by non-agent witnesses. 607 F.2d at 1297–98.

We found that defendant sought to challenge the credibility of only one government representative, Halpin, and

> that his testimony was [not] pivotal in the government's case. Neither has Pappas pointed us to any instance in which Halpin's testimony was matched against that of a non-government employee in a way that might have been possibly prejudicial to Pappas. When we take this together with the fact that the court's questions on *voir dire* did relate to the refused query, *see* note 4 *supra*, and that Pappas did not raise the credibility issue when suggesting jury instructions,[5] we are satisfied that the court's error was harmless.

Footnote 4, which we do not reproduce, recited eight questions regarding possible interests and disqualifications which, in sum, came close to defendant's inquiry. Footnote 5 quoted an extensive charge that included the special interests of witnesses, and noted that defendant had asked for nothing further.

■ *Pappas* thus stands for the proposition that, where government representatives are going to testify, the court should make the inquiry that defendant sought here, but, on review of the ultimate record, it may appear that the error was harmless.

■ The government cites *Pappas*, but goes on to cite *Therrien v. Vose*, 782 F.2d 1 (1st Cir.), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 727 (1986), where the court spoke of *Pappas* as follows.

> In a case such as this, where the prosecution relies heavily upon the testimony of police officers, the trial judge must be cognizant of the risk that jurors might give more credence to witnesses called by the prosecution. In certain circumstances, the refusal of a judge to ask prospective jurors questions designed to weed out such bias may be reversible error. *See United States v. Pappas*, 639 F.2d 1, 4–5 (1st Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

The court then, in spite of the conceded importance of the police officers' testimony, held that there was no error in denying defendant's inquiry, and found that other matters, though they fell short, gave defendant adequate protection. This significantly downplayed the importance of our *Pappas* ruling, that the inquiry should be made, though the error might ultimately prove harmless. Thus, one who read *Vose* without reading *Pappas* would think that even though government representatives were going to testify, the court had broad discretion to refuse voir dire inquiry as to a juror's likelihood to give them special credence, and if one read *Pappas* without reading *Vose* one would conclude that the court had no discretion in such a case. A casual reading of both would indicate that *Vose* had replaced *Pappas*, a quite improper action. Later panels, as distinguished from en bancs, cannot disregard a prior case however much they may believe it wrongly decided. The resulting instability of the law would be far too high a price to pay for such "corrective" possibilities.

In point of fact, although the *Vose* court failed to spell it out, the two cases are not inconsistent. *Pappas* was a federal conviction; *Vose* a habeas corpus attack on a state conviction. The latter requires unconstitutionality, as the *Vose* court recognized by its reliance upon *Ristaino v. Ross*, 424 U.S. 589, 594–95, 96 S.Ct. 1017, 1020–21, 47 L.Ed.2d 258 (1976), and *Ham v. South Carolina*, 409 U.S. 524, 527–28, 93 S.Ct. 848, 850–51, 35 L.Ed.2d 46 (1973). In *Ristaino*, however, the Court took pains to point out that it was supporting the refusal

of the voir dire inquiry there involved because it found it not constitutionally required, although it would have decided otherwise had it been a question of exercising its supervisory power. 424 U.S. at 597 n. 9, 96 S.Ct. at 1022 n. 9. Thus viewed it is possible to reconcile *Vose* with *Pappas*, and this being a federal conviction, we proceed with the *Pappas* rule, unencumbered.

The government makes its standard claim that if there was error, it was harmless. We find, however, to the contrary. Keaney, the agent in charge of the operation, and the "money man," was the government's first witness. His testimony occupied one hundred pages of transcript. As against the government's protest that he was inherently credible, a questionable proposition under any circumstances, we note, for example, that his testimony on direct that the $1,000 he had given the informant was not a reward, but moving expense money, was conceded on the government's summation to be "basically a reward," a very different matter. Both he and agent Graffam inculpated defendant. But the telling concession as to the importance of the government agents is to be found in the prosecutor's own mouth. Faced with attacks on the credibility of the informant, and a co-defendant who had pleaded and hoped for a lesser sentence, in his final summation he said,

I ask you to look at all the evidence, to look at how their [the informant's and co-defendant's] testimony is corroborated by law enforcement officers ...

And I suggest that to disbelieve both these individuals [the informant and co-defendant] in regards to their testimony as corroborated by all the law enforcement agents does not make sense ...

Surprisingly, in its brief before us the government continues.

Finally, the testimony of the government agents was largely corroborated by the non-agent witnesses, [informant and co-defendant].

This, singularly, is still under the heading that failure to make the voir dire inquiry was harmless. We may ask whether the government does not have the cart before the horse. The most important witnesses against defendant were the informant, and the co-defendant. Why is any credibility problem of the government agents removed because they are corroborated by the witnesses whose testimony would convict defendant? The government is in sore straits to be making such an argument.

Finally, on the subject of *Pappas* and harmless error, the eight-pronged voir dire inquiry made there came fairly close to what Pappas had sought. The government's claim that this occurred here is wide of the mark.

The denial of the voir dire was compounded by the court's allowing Keaney, the witness as to whom the inquiry was particularly directed, to sit at counsel table, following his testimony, through the balance of the trial. It is understandable that in some cases trial counsel may need assistance other than an associate or paralegal. Whether this should include a witness, particularly an important one, must be in the court's discretion. *United States v. Shearer*, 606 F.2d 819, 821 (8th Cir.1979); *United States v. Little*, 753 F.2d 1420, 1441 (9th Cir.1984). We make no suggestion that chief government representatives should be excluded from the courtroom, or that counsel should be prevented from conferring with them. Fed.Evid.Rule 615; *In re United States*, 584 F.2d 667 (5th Cir.1978). But as to sitting at counsel table, the undesirability of government counsel's endorsing the credibility of a witness should be borne in mind. As we said in *United States v. Patriarca*, 402 F.2d 314 (1st Cir.), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969) at 321,

[L]aw enforcement officials wear an invisible cloak of credibility by virtue of their position; to make it explicit may too easily tip the scales.

A witness who sits side by side with counsel would seem implicitly vouched for.

In the present case Keaney, in addition to explaining tapes and telephone calls, testified to his original contact and financial dealings with the informer, described the agent's role in setting up the planned sale at which defendant was arrested, nar-

rated the events on the night of the sale, and recounted the details of the sale and arrest. We need not reach the question whether he was important enough, in the context of the trial, for it to have been error to permit him to sit at counsel table as it was not objected to, and we would not regard it as plain error.[2] At the same time, his presence at the table clearly accentuated the importance of the voir dire inquiry.

As against this, the government is correct in pointing out that defendant failed to ask for an instruction that government representatives should not be given special credence, an omission we held counted against defendant Pappas. We do not think it should count heavily as against the right to eliminate jurors in the first place. *United States v. Lewin*, 467 F.2d 1132 (7th Cir.1972). We would not, in any event, consider this failure sufficient to overcome the prejudice defendant suffered otherwise. We do not depart from the principle that the court has very broad discretion as to how much, and what, is to be asked of prospective jurors. This is, and should be, the usual rule, but there are certain, few, fundamentals that a party is entitled to have asked. Because of the link that it is too easy to make between government representatives and the prosecution, *Pappas* listed this one as basic, and we adhere to that ruling. And, on the record, we do not find the error harmless.

Finally, we observe that the serious error in the government's summation, asking how defense counsel could "explain" certain events that were unexplainable because defendant did not testify, *United States v. Skandier*, 758 F.2d 43 (1st Cir. 1985), was promptly and well defused by an alert court.

*Reversed.*

---

2. It appears that defendant sat with his counsel, also. This is not the same thing. The United States Attorney, because of his special, over-riding "two-fold aim" noted in *United States v. Berger*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), occupies a different role from private counsel. Even here, however, the right to sit at counsel table must be in the discretion of the court.