UNITED STATES of America,
Plaintiff–Appellee,

v.

Maria Guadalupe DeVALLE,
Defendant–Appellant.

No. 89–2070
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1990.

Ralph R. Martinez, Houston, Tex. (Court-appointed), for defendant-appellant.

Frances H. Stacy and Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Maria Guadalupe DeValle (DeValle) was convicted, following a jury trial, of conspiring, from February 6, 1988 to February 29, 1988, to transport an alien illegally within the United States, contrary to 8 U.S.C. § 1324(a)(1)(B), and to harbor and shield from detection the same alien, contrary to 8 U.S.C. § 1324(a)(1)(C), all in violation of 18 U.S.C. § 371 (count one), and of the substantive offenses of transporting a specified alien from Brownsville to Houston on February 28, 1988, contrary to 8 U.S.C. § 1324(a)(1)(B) (count two), and of concealing, harboring, and shielding the same alien from detection in a specified apartment in Houston on February 28, 1988, contrary to 8 U.S.C. § 1324(a)(1)(C) (count six; the other counts in the indictment did not charge DeValle). She was sentenced to fourteen months' confinement on each of these three counts, the sentences to run concurrently; she was also sentenced to two years' supervised release following the confinement on each of the counts, the supervised release terms being concurrent with each other; and she was ordered to pay a special assessment of $150 ($50 on each count).

Because DeValle became a fugitive following her conviction, the government has moved to dismiss her appeal. We grant the motion in part and deny it in part; and we further vacate the sentence and remand for resentencing.

## Procedural History

Some statement of chronology is necessary to a proper understanding of the issues presented.

In March 1988, following her arrest on the instant charges, DeValle was released on her own recognizance. The terms of her release required that she regularly report to the Pretrial Services Agency. Jury trial was held in Houston in October 1988 and DeValle, represented by counsel, was present and testified in her own behalf. The jury returned a verdict of guilty on the above-mentioned counts on October 21, 1988. Following return and acceptance of the verdict, the district court informed DeValle personally in open court that she could remain at large under her existing personal recognizance bond, but needed to make sure that she reported to the court at the appropriate times and stay in touch with her lawyer so that she could be present at the next court appearance date. The court also then advised that a presentence report would be prepared and made available, and that thereafter sentencing

would likely be had in November or early December 1988.

On October 24, 1988, the court entered an order, copy of which was served on defense counsel, directing that the presentence report be completed by November 28, and made available to defense counsel and counsel for the government, who would have until December 8 to file objections, with a final presentence report to be presented December 20, and with sentencing set for January 6, 1989 at 1:30 p.m. This order also instructed DeValle to immediately report to the Probation Department in Houston.

DeValle apparently never was interviewed by the Probation Department, and failed to keep in contact with the Pretrial Services Agency as previously ordered, and accordingly on December 7, 1988, the district court issued a bench warrant for her arrest.

At the time set for sentencing on January 6, 1989, counsel for the government and for DeValle appeared, but DeValle did not. The court asked her counsel if there was "any reason" for the court to believe that she "has done anything other than voluntarily absented herself from the Court?" Her counsel replied, "[T]o be forthright, I probably have information based upon my discussions with her daughter that she, in fact, has voluntarily absconded." Because DeValle had voluntarily absented herself, the government moved that sentencing be had in her absence, under Fed.R.Crim.P. 43(b). Although recognizing that she had voluntarily absented herself, defense counsel nevertheless objected to proceeding with the sentencing in her absence, stating that "when and if she is apprehended, the Court could commence with sentencing her at that time." Counsel took the position that sentencing should be deferred at least for a few months "until she is, in fact, given a chance to be apprehended." The court nevertheless declined to postpone sentencing, and proceeded to sentence DeValle *in absentia* as above indicated.

At the conclusion of sentencing, DeValle's counsel informed the court that he had communicated with her "right after" the jury verdict and she did not indicate "one way or the other" whether she wanted to appeal. Counsel indicated that he would file a notice of appeal on her behalf, and the court ordered that she be allowed to appeal *in forma pauperis* and that her trial counsel represent her on appeal.

On January 10, 1989, DeValle's counsel filed a notice of appeal on her behalf, checking the block on the notice of appeal form indicating that the appeal was from the "Conviction and Sentence." On September 13, 1989, the record on appeal was filed with this Court. On September 28, 1989, DeValle was recaptured, apparently in Brownsville. On October 23, 1989, DeValle, through her same counsel, filed her brief on appeal. This brief challenges her sentences, but does not expressly challenge her convictions, except insofar as it suggests that the substantive offenses of transporting and harboring are actually not separate, but constitute only a single offense. On December 18, 1989, the government filed its motion to dismiss the appeal, and subsequently DeValle, through the same counsel, filed her response to this motion.

### Discussion

#### I

It is settled that where a defendant becomes a fugitive from justice during the pendency of her appeal, the appellate court has the authority to dismiss the appeal. *See United States v. Glomb,* 877 F.2d 1 (5th Cir.1989). DeValle does not question this settled rule, and she does not contest the fact that she knowingly and voluntarily absented herself and became a fugitive from justice. She rather contends that the general rule is inapplicable to this case, and that we lack authority to dismiss her appeal because of two factors.

First, DeValle contends that since she was recaptured before the appeal was dismissed, indeed before the motion to dismiss was filed, we therefore lack authority to dismiss the appeal. We reject this con-

tention.[1] While we have not previously ruled on this precise point, we have refused to reinstate appeals, previously dismissed because of fugitive status, when the fugitive is recaptured. *See Estrada v. United States,* 585 F.2d 742 (5th Cir.1978); *United States v. Shelton,* 508 F.2d 797 (5th Cir.), *cert. denied,* 423 U.S. 828, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975). *See also, e.g., Van Blaricom v. Forscht,* 490 F.2d 461 (5th Cir.1974), *cert. denied,* 423 U.S. 915, 96 S.Ct. 222, 46 L.Ed.2d 144 (1975) (appeal dismissed subject to reinstatement if appellant returns to custody within thirty days); *United States v. Eberhardt,* 467 F.2d 578 (5th Cir.1972) (same). Moreover, other courts have held that recapture prior to dismissal does not bar dismissal of the appeal for the prior fugitive status. In *United States v. Puzzanghera,* 820 F.2d 25 (1st Cir.), *cert. denied,* 484 U.S. 900, 108 S.Ct. 237, 98 L.Ed.2d 195 (1987), the appellant escaped after sentencing and notice of appeal, the government then moved to dismiss the appeal, and the appellant was recaptured before the court's ruling. The court nevertheless dismissed the appeal. Similarly, in *United States v. Parrish,* 887 F.2d 1107 (D.C.Cir.1989); *United States v. Persico,* 853 F.2d 134 (2d Cir.1988); and *United States v. Holmes,* 680 F.2d 1372 (11th Cir.1982), *cert. denied,* 460 U.S. 1015, 103 S.Ct. 1259, 75 L.Ed.2d 486 (1983), the appellate courts in each case dismissed the appeal, insofar as it was from the conviction, because of the appellant's fugitive status between conviction and sentencing, notwithstanding that he had been recaptured prior to sentencing and thereafter remained in custody. A similar result was reached in *United States v. London,* 723 F.2d 1538 (11th Cir.), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2684, 81 L.Ed.2d 878 (1984), where the appellant became a fugitive during the course of trial, but was thereafter recaptured following the completion of trial and prior to sentencing. We elect to follow these decisions insofar as they hold that recapture prior to dismissal of the appeal (and indeed prior to the filing of a motion to dismiss the appeal) does not deprive the appellate court of authority to dismiss the appeal, at least as to trial proceedings completed before the appellant became a fugitive.

DeValle's second argument in this connection is that we lack authority to dismiss the appeal because her fugitive status commenced before sentencing and before appeal, while the case was still in the district court, and that her fugitive status was hence an offense against the district court rather than against this Court. In this connection, DeValle relies on *United States v. Anagnos,* 853 F.2d 1 (1st Cir.1988), in which the First Circuit held that it was not proper to dismiss an appeal where the appellant had become a fugitive after his conviction but was recaptured before sentencing and remained in custody thereafter. In so holding, the First Circuit declined to extend its prior holding in *Puzzanghera,* where fugitive status commenced after the appeal was taken and the appeal was dismissed notwithstanding the appellant's recapture before the dismissal was ordered. However, we decline to follow *Anagnos,* and instead follow *Parrish, Persico, Holmes,* and *London,* discussed above. Moreover, we observe that in *Anagnos,* the appellant was returned to custody before the appeal was taken and remained in custody thereafter, while in this case DeValle has been in a fugitive status for approximately eight months during the pendency of this appeal. The fact that her fugitive status commenced before the appeal was taken should not be regarded as a sufficiently mitigating circumstance to distinguish this case from *Puzzanghera,* which the First Circuit did not purport to overrule in *Anagnos.*

Based on the foregoing, we conclude that we have the authority to dismiss the appeal insofar as it is from DeValle's convictions. Whether we have the authority to dismiss the appeal insofar as it is from DeValle's sentences may well be another matter. We observe that in *Parrish, Persico, Holmes,*

---

1. However, we do recognize that her recapture before the appeal has been dismissed (and before the motion to dismiss has been filed) is a factor to be considered in determining whether we should exercise our discretion to dismiss the appeal.

and *London*, where the appellant became a fugitive following conviction but was recaptured prior to sentencing and thereafter remained in custody, the appeal was dismissed *only* as to the conviction, and the dismissal was without prejudice to the appellant's challenging his sentence on appeal. Those cases, however, are somewhat different from this case, because in all of them the appellant was present at his sentencing and remained in custody throughout the appeal, while here DeValle was not present at her sentencing and has been in a fugitive status during the first some eight months that her appeal has been pending, although she has now for several months been returned to custody.

■ We need not determine, however, whether we lack authority to dismiss the appeal as to the sentences, because it is clear that in any event dismissal of the appeal because of prior fugitive status is discretionary with the appellate court, and we conclude that this is an inappropriate case in which to dismiss the appeal as to the sentences, even though we deemed it appropriate to dismiss the appeal as to the convictions.

The discretionary nature of the rule concerning dismissal for fugitive status is reflected in our decisions in which we have made the dismissal conditional on the appellant's failure to return to custody within a specified time, or subject to reinstatement in case of such return. *See Shelton; Van Blaricom; Eberhardt.* Also relevant in this connection is *United States v. Snow*, 748 F.2d 928 (4th Cir.1984), where after his appeal following sentence, the appellant escaped and was recaptured within nineteen days, following which the government moved to dismiss his appeal, and the Fourth Circuit declined, in the exercise of its discretion, to dismiss the appeal, saying it saw "no need to flex its muscles ... inasmuch as Snow was already back in custody." *Id.* at 930.

■ As we have noted, the appellate courts have traditionally allowed an appeal from the sentence, even though the appeal from the conviction is dismissed because the appellant became a fugitive following his conviction and remained such until he was recaptured and thereafter sentenced. Sentencing in those cases was not held *in absentia*, despite often quite lengthy postponement due to the defendant's fugitive status. Those cases doubtless proceeded in that fashion because it has uniformly been held that fugitive status—at least fugitive status commencing before the sentencing proceeding begins—does not justify sentencing *in absentia*, and that Fed.R. Crim.P. 43 does not authorize felony sentencing of an individual *in absentia* (except where sentence is reduced under Fed.R. Crim.P. 35). *See United States v. Songer*, 842 F.2d 240 (10th Cir.1988); Wright, *Federal Practice and Procedure: Criminal* 2d § 723 at 25–26 ("If the defendant has voluntarily absented himself, the court is authorized to proceed only up to the return of the verdict. It is not authorized to impose sentence until the defendant has been returned. But it has been held, very sensibly, that a defendant, with the consent of the court, may expressly waive being present at the sentencing." (Footnotes omitted.)); 8B *Moore's Federal Practice* § 43.04, p. 43–35 ("Rule 43 requires the defendant's presence at sentencing in all cases, except misdemeanors where the defendant has expressly waived his presence." (Footnote omitted.)). We expressly so held in *United States v. Brown*, 456 F.2d 1112 (5th Cir.1972). There, following a remand, the district court ordered Brown to appear for resentencing on September 9, 1970. When he did not then appear, the district court, after several continuances, sentenced him on September 24, 1970 *in absentia* (reimposing the sentence which had originally been imposed prior to the first appeal). Brown's counsel filed a notice of appeal, Brown still being *in absentia*. This Court, while Brown was still absent, *sua sponte* struck his appeal from its docket, subject to reinstatement on appropriate motion should Brown become available and subject to this Court's judgment. Several months later, Brown, then in custody in New York, moved to reinstate the appeal. We granted reinstatement, and proceeded to reverse and remand for resentencing because of the error in sen-

tencing Brown *in absentia.* We stated that such sentencing was "in clear violation of Rule 43" and that while under certain circumstances a defendant could be absent during trial, nevertheless "a defendant *must* be present at sentencing." *Id.* at 1114 (emphasis in original).[2]

■ Inasmuch as DeValle's sentencing should have been postponed, as her counsel requested, we think it appropriate, at least in these particular circumstances, not to put the government in any better position than it would have been in if sentencing had been postponed until she was returned to custody and she had thereafter appealed, in which event, as the above-cited authorities reflect, the general practice has been to dismiss the appeal only as to the conviction but not as to the sentence. Given further that DeValle was returned to custody within approximately two weeks after the record was lodged in this Court and before her appellant's brief was filed with us, and that the government's motion to dismiss was not filed until after DeValle's brief, we conclude that it would be an inappropriate exercise of our discretion, assuming we had the discretion to do so, to dismiss the appeal as to the sentences. However, under the above-cited cases, we clearly have the authority to dismiss the appeal as to the convictions, and we think it appropriate to do so here. As a general matter, willful flouting of the judicial system on the part of one seeking appellate redress should not go wholly unrecognized. And the possibility of prejudice to the government is usually much greater in cases where the conviction, rather than simply the sentence, is open to attack after a period during which the defendant is in a fugitive status. Further, in the present case, we note that there is no real substantive challenge to the convictions, only, at most, the claim counts two and six, transporting and harboring, describe only a single offense and, inferentially, there should be conviction on only one of them. This is a purely technical argument because the sentences (except for the $50 special assessment) are entirely concurrent and there is no dispute as to the fact that DeValle was actually guilty of both transporting and harboring. Moreover, for the reasons indicated below in connection with the sentences appeal, the claim of multiplicity is wholly without merit in any event.

Accordingly, we sustain the government's motion to dismiss the appeal to the extent (if any) that it seeks to appeal any of DeValle's convictions; but we deny the motion to the extent that it seeks to dismiss the appeal from the sentences.

## II

■ In order to dispose of the government's motion to dismiss, we have had to address the matter of sentencing *in absentia.* Because of this, and because we similarly proceeded in *Brown,* we now set aside DeValle's sentences and remand for resentencing because of the error in sen-

2. *Brown* does not state that such presence is constitutionally required, and we have held that it is not. *See Byrd v. Hopper,* 537 F.2d 1303 (5th Cir.1976). Further, *Brown* indicates that in certain "most extraordinary circumstances" there could be sentencing *in absentia,* citing as an example *United States v. Boykin,* 222 F.Supp. 398 (D.Md.1963). *See Brown,* 456 F.2d at 1114. In the cited *Boykin* case, the district court granted a motion by the defendant's counsel, supported by the affidavit of the defendant personally, and by the court's independent investigation, that the defendant be excused from being personally present at sentencing due to his extreme ill health and his desire to nevertheless proceed with sentencing to eliminate further uncertainty and worry on his part. We do not undertake to say that there may never be sufficiently aggravated and necessitous circumstances occasioned by a defendant's voluntarily absenting himself to authorize sentencing *in absentia.* Assuming, *arguendo,* that there may be such extreme circumstances, we do not believe that they are present in this case. Here, the absence prior to sentencing was only approximately two months, and there was no special reason, apart from the reasons applicable in almost any criminal case, not to delay sentencing. Were we to hold that this case presents an exception to the general rule against *in absentia* sentencing even of a defendant who has voluntarily absented himself, then the exception would virtually swallow the rule. While, as a policy matter, there may be good reason to question the soundness of the general rule in this respect, it appears clearly established, and certainly so in this Circuit by *Brown,* which binds us.

tencing her *in absentia*.[3]

For the district court's guidance on resentencing, we also now dispose of De-Valle's complaint that the substantive counts of transporting and harboring are multiplicious and hence cannot support separate sentences.[4] It is true that the same alien was involved in each substantive count and that the transporting and the harboring occurred on the same day. But as charged in the indictment and as shown by the evidence, it is clear that separate and distinct conduct is the basis of each of the substantive offenses, the transporting being the automobile trip from the vicinity of Brownsville to Houston, during which DeValle accompanied the alien, and the harboring consisting of several hours of keeping the alien, after the trip was completed, in a specified apartment in Houston. The transporting is denounced by section 1324(a)(1)(B) and the harboring is separately denounced in section 1324(a)(1)(C). While it may well be that separate offenses cannot be made out by simply characterizing transporting as harboring, or vice versa, that is clearly not what was either charged or proved here. Rather, here each substantive offense consisted of distinct conduct, each at separate times and places and each of a different character (transporting in a moving vehicle and harboring in a specified apartment) from the other. The case of *United States v. Sanchez–Vargas*, 878 F.2d 1163 (9th Cir.1989), relied on by DeValle, is clearly distinguishable.[5] There, the defendant drove an undocumented alien across the border and was charged under section 1324(a)(1)(A) with illegally bringing the alien into the United States, and under section 1324(a)(1)(B) with illegally transporting the alien within the United States, and was sentenced to consecutive terms of imprisonment for each offense. However, the court observed that "the underlying criminal conduct consists of the singular act or transaction of driving an undocumented person across the United States–Mexico border," 878 F.2d at 1167, and that the defendant, who was stopped with the alien "just a few miles from the border ... necessarily committed the offenses of bringing in and transporting at virtually the same time and place," and such conduct "exhibited neither the temporal nor spatial distance characterizing our prior decision upholding multiple penalties." *Id.* at 1171. As indicated, that rationale is wholly inapplicable to the setting of this particular case. DeValle's claim that the substantive counts are multiplicious and cannot support separate sentences or special assessments is without merit.

### Conclusion

To summarize, we have granted the government's motion to dismiss the appeal insofar (if at all) as it is an appeal from DeValle's convictions; but we have denied the motion to dismiss the appeal insofar as it appeals DeValle's sentences. The appeal of the convictions is therefore dismissed. As to the sentences, DeValle's sentences are vacated and the cause is remanded to the district court for resentencing in De-Valle's presence.

Appeal from conviction DISMISSED; sentence VACATED and cause REMANDED for resentencing.

---

**3.** DeValle's convictions are left undisturbed, as we have dismissed the appeal from them (to the extent that any such appeal has been attempted).

**4.** Of course, the sentences are concurrent, so there is no prejudice to DeValle, except as to the claimed "extra" $50 assessment. *See Ray v.*

*United States,* 481 U.S. 736, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987).

**5.** We therefore need not and do not determine whether we would follow *Sanchez–Vargas* on facts similar to those present in that case.