**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Enrique ALMEIDA–BIFFI,**
**Defendant-Appellant.**

**No. 86–2655.**

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1987.

---

9. *Id.* at 563 (emphasis in original).

10. Pub.L. No. 99–603, § 201, 100 Stat. 3359, 3394 (to be codified at 8 U.S.C. § 1255a).

John G. Garcia, Houston, Tex. (Court-appointed), for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Enrique Almeida-Biffi (Almeida) appeals his convictions for: (1) conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. § 846; (2) possession of cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1); and (3) importation of cocaine in violation of 21 U.S.C. §§ 952 and 960. We affirm.

## I.

The indictment charges that on or about December 10, 1985, Almeida, his wife, Sharon Bloom-Almeida, Victor Vargas, Joe Mora, Robert Wilson, and persons unknown conspired to possess cocaine with intent to distribute it. Almeida, Vargas, and Mora were also charged with importation and possession of cocaine. Although the trial of all of these defendants began together, during the trial, the conspiracy count was dismissed against Sharon Almeida, Robert Wilson, and Victor Vargas and the trial on the remaining substantive counts against Vargas was severed.

During his opening statement, the attorney for Almeida's wife, Sharon, argued that his client did not voluntarily participate in the charged conspiracy; counsel argued that because of her husband's cocaine smuggling, Sharon's relationship with him had deteriorated to the point that she feared for her safety and the safety of her children; for this reason Sharon had decided to divorce her husband.

After this statement, Almeida's counsel moved for severance on grounds that Sharon's defense was antagonistic to his own defense. The district court denied this motion because no evidence had yet been introduced to support the opening statement.

The government then established the following material facts:

In early December 1985, Drug Enforcement Administration (DEA) undercover agent, David Michael, received a message that Almeida had telephoned him from a hotel in Nuevo Laredo, Mexico. Michael returned Almeida's call and in that conversation Almeida informed Michael that: (1) Almeida would be coming to the United States in a few days to deliver cocaine to Michael that Michael had purchased from Almeida earlier in the year; (2) Almeida

was waiting to hear from his friends who were transporting the cocaine to the United States; (3) the cocaine would be arriving in either New Orleans or Houston; and (4) Almeida needed additional funds from Michael to pay the men transporting the cocaine.

A few days later, on December 10, 1985, DEA Agents Michael and McCullough met Almeida in a hotel room in Houston, Texas. Almeida had twelve packages in his possession that contained a total of three kilograms of cocaine. Almeida told the agents that this cocaine had arrived in Houston aboard a Peruvian freighter a couple of days earlier. Almeida advised the agents that he had personally trained the individual—apparently Vargas—who smuggled the cocaine off the ship when it arrived at the Port of Houston. Almeida also referred to two men in Peru as his source of processed cocaine.

Although Michael had originally agreed to purchase only one kilogram of cocaine, Almeida offered Michael ten of the packages of cocaine if Michael would pay the courier fees of $7,000 per kilogram. Almeida informed the agents that the two remaining packages were committed to someone else.

Almeida was then arrested in the hotel room. Approximately one hour later, Joe Mora was also arrested when he came to the hotel room to pick up the money due Vargas. Vargas was later arrested aboard a Peruvian freighter, the M/V KIPU, docked at the Port of Houston.

The government sought to introduce evidence of events that occurred in the spring, summer, and fall of 1985 but because the indictment charged a conspiracy that occurred on or about December 10, 1985, the district court excluded evidence of events that occurred before or after that date.

After the first day of trial, the district court held a hearing in order to determine whether sufficient independent evidence of a conspiracy existed so that co-conspirator hearsay statements could be admitted into evidence. See *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). After this hearing, the court concluded that the government had failed to establish by substantial independent evidence that Almeida's wife, Wilson, and Vargas were participants in the charged conspiracy. But, as to Almeida and Mora, the court found that the government had established substantial independent evidence of a conspiracy.

The court then dismissed the conspiracy counts against Sharon Almeida, Wilson, and Vargas. This action resulted in the complete dismissal of the indictment against Sharon because she was only charged with conspiracy. Almeida then moved for a mistrial contending that the opening statement given by his wife's attorney had prejudiced him and the jury could not give him a fair trial. The trial court denied this motion.

The district court severed Vargas' trial on the substantive counts remaining against him but the trial continued against Almeida and Mora on all counts. The jury found Almeida guilty on all counts but acquitted Mora.

## II.

In this appeal, Almeida raises nine points of error which can be addressed in four issues: (1) did the district court abuse its discretion by denying Almeida's severance motions; (2) did the district court abuse its discretion by denying Almeida's motion for mistrial after it dismissed the charge against Almeida's wife; (3) is the evidence sufficient to support Almeida's convictions for conspiracy and importation; and (4) did the district court commit plain error by limiting evidence of the conspiracy to events on or near December 10, 1985. We address these contentions in order.

## A.

■ Almeida first argues that his wife's lawyer asserted a defense in his opening statement that was so irreconcilable with his own defense that the district court denied him a fair trial when it refused to grant his motion for severance.

Rule 14 of the Federal Rules of Criminal Procedure commits a motion for severance

to the sound discretion of the district court.[1] In this circuit, the district court is not required to grant a defendant's motion for severance unless the defenses of two co-defendants are "antagonistic to the point of being mutually exclusive or irreconcilable." *United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir. Unit B 1981) (citations omitted). To meet this standard, "the essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir.1984) (citing *Berkowitz*, 662 F.2d at 1134).

In this case, the jury's acceptance of Sharon's duress defense did not require the jury to disbelieve her husband's defense. The jury could have accepted Sharon's representations that her husband was engaged in trafficking cocaine yet find that he did not participate in the December 10, 1985 transaction. Thus, Sharon's defense and the defense of her husband were not "antagonistic to the point of being mutually exclusive or irreconcilable," as required by *Romanello*, *Berkowitz*, and a number of other cases from this circuit.

Also, no reference was made by Sharon's counsel to her duress defense after the opening statement. Sharon did not testify and no one referred to her duress defense during the balance of the trial. In addition, the district court instructed the jury on several occasions that statements of counsel were not evidence and that the jury's decision should be based on the evidence presented during the trial. Thus, the district court was entitled to conclude that Almeida did not demonstrate the extreme prejudice required to justify a severance. *See United States v. Mota*, 598 F.2d 995, 1000 (5th Cir.1979), *cert. denied*, 444 U.S. 1984, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980).

### B.

■ Almeida also contends the district court erred by denying his motion for mistrial after his wife was dismissed from the case. Almeida argues that the opening statement by his wife's attorney incurably prejudiced him in the eyes of the jury and that the accuracy of that statement was then confirmed for the jury by her later dismissal from the case.

We have determined that the opening statement by Sharon's attorney was not so prejudicial to Almeida that the district court was required to try Almeida separately from his wife. We are also persuaded that the opening statement did not prejudice Almeida to the extent that a mistrial was required. Furthermore, the jury was clearly and strongly instructed not to speculate why Mrs. Almeida was dismissed from the case.[2] No additional prejudice resulted to Almeida from the dismissal of his wife as a defendant. We conclude therefore that the district court did not abuse its discretion by denying Almeida's motion for mistrial.

---

1. Rule 14 provides, in pertinent part:
   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

2. After Mrs. Almeida and Robert Wilson were dismissed from the case the trial court instructed the jury in pertinent part as follows:
   Now, ladies and gentlemen of the jury, I want to call your attention to the fact that there are three defendants in this case at this time: Enrique Almeida, Victor Vargas, and Joe Mora. Robert Wilson and Sharon Bloom-Almeida are no longer in this case.

   I want to instruct you and instruct you very directly and strongly that no speculation should be engaged by any of you either at this time or any other time as to why this proceeding is going forth with reference to only three of the defendants.

   Remember, you are to rely only on the evidence presented in this case and not on what counsel may say. That applies, particularly, to the opening statements and the arguments of counsel at a later time.

   You are to act as the fact-finding arm of this court and consider only the evidence in this case which is presented from the witness stand and from the documents that are properly admitted into evidence.

## C.

Almeida next challenges the sufficiency of the evidence supporting his conspiracy and importation convictions. In reviewing Almeida's contentions, we view the evidence in a light most favorable to the jury verdict in order to determine whether a reasonable jury must necessarily have had a reasonable doubt of Almeida's guilt. *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982).

■ Almeida first argues that his conspiracy conviction must be reversed because none of his alleged co-conspirators were convicted and the evidence at trial did not establish the existence of unknown co-conspirators.

Almeida's conversations with DEA Agent Michael establish that Almeida did not bring the cocaine into the United States without help; the jury was entitled to find that whoever smuggled the cocaine into the country for Almeida conspired with him. Thus, we are persuaded that the record demonstrates sufficient evidence from which the jury could reasonably conclude that Almeida conspired with others to possess the cocaine that was in his possession on December 10, 1985.

■ On the substantive importation count, Almeida argues that the evidence was insufficient to establish that the cocaine that Almeida possessed on December 10, 1985 was imported. This contention is without merit. DEA agents testified that Almeida informed them that the cocaine in his possession arrived in Houston aboard a Peruvian freighter a couple of days earlier. Also, after Mora's arrest, he informed DEA agents that he and Vargas were members of the crew of a Peruvian vessel, the M/V KIPU. Mora also stated that Vargas hid this cocaine on board the M/V KIPU during their voyage from Peru and delivered it to Almeida after the KIPU arrived in Houston. Almeida also told the agents that his supplier was from Peru,

which gave the jury an additional reason to conclude the cocaine came from Peru. The jury was entitled to conclude from this evidence that the cocaine in Almeida's possession on December 10, 1985 was imported.

The evidence is therefore sufficient to support Almeida's conspiracy and importation convictions.

## D.

■ Almeida finally argues that the district court erroneously limited the government's evidence of conspiracy to events on or about December 10, 1985, thereby prejudicing his defense.

Almeida joined in the objection made by his wife's attorney that led the district court to make this ruling; he also did not object after the district court made the ruling. Therefore, we review the district court's decision to limit the evidence of conspiracy only for plain error. Fed.R. Crim.P. 526(b).

The principal effect of the court's ruling was to prevent the government from introducing evidence of Almeida's earlier participation in the conspiracy—evidence surely prejudicial to him. Almeida argues vaguely that it was somehow to his advantage to show his activity before December 1985 but he has failed to demonstrate how this evidence would have assisted in his defense.[3]

## CONCLUSION

We find no error; accordingly the judgment of the district court is

AFFIRMED.

---

**3.** We have also considered Almeida's argument that the prosecutor made improper comments on two occasions in his closing argument. Counsel, in both instances complained of, was refuting the argument of either Mora or Almei-

da's counsel and we conclude that the argument was not improper. In any event, no contemporaneous objection was made to the argument Almeida now complains of and the error, if any, in permitting the argument, was not plain error.