**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Andrew Michael GLOMB,
Defendant–Appellant.**

No. 88–1595.

United States Court of Appeals,
Fifth Circuit.

June 23, 1989.

Dana P. Brigham, Brigham & Brigham, Miami Lakes, Fla., for defendant-appellant.

William D. Sheetz, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before JOLLY, HIGGINBOTHAM and SMITH, Circuit Judges.

PER CURIAM:

Andrew Michael Glomb pled guilty to a count of conspiracy to possess cocaine with intent to distribute, on the condition that he be allowed to appeal the question whether his fourth amendment rights were violated by a warrantless seizure that led to his arrest. After being sentenced, Glomb failed to report to prison and instead remained a fugitive for sixteen months. Concluding that Glomb's flight and failure to report constituted a valid waiver of his right to have his fourth amendment claim reviewed, we affirm the district court.

I

A.

On September 10, 1983, Glomb traveled from Miami to Dallas to deliver the cocaine to his co-conspirators, Levine and Emerick. Glomb had shipped 8.9 ounces of pure cocaine on a Pan American flight from Miami to the Dallas/Fort Worth Regional Airport. Glomb had filled out an airway bill form, using the shipper address of "Broward Pump, 4810 W. Griffin Road, Davie, Florida," addressing the packet to "Phil Levine, E & L Pump Service, hold for pickup Dallas, Texas." Six or seven federal agents from the FBI and DEA were at the Pan American terminal at the Dallas/Fort Worth Regional Airport, awaiting Glomb's arrival. While Special Agent Siano, who was in charge, was inside the Pan American terminal arresting Glomb and Emerick, other agents were outside arresting Levine.

Earlier, agents had observed Glomb and co-conspirator Bowers deplane from Pan American flight 575 and meet Emerick and Levine; they saw Levine hand a white envelope to Glomb and Glomb hand two small pieces of paper to Levine. Special Agent Seay searched Levine at the time of his arrest and discovered a piece of paper in Levine's pocket which he suspected was the same paper that Levine and Glomb had been looking at earlier in the terminal. Seay handed the paper, an airway bill, to Special Agent Siano who took it into the terminal. After about a minute inside the

terminal, Siano returned with a box, approached Levine and said, "This box is addressed to you, you have a right to open this package but I don't." Siano added that although he did not have the right to open the box, he could obtain a search warrant and added, "Whatever is in that box will not change regardless of when it's opened. It will still be the same contents." Levine claimed that he didn't "know what was in the box," and then he consented to opening it. The box was opened and the cocaine was discovered. Once the box was opened and the contents exposed, Levine said, "That's not my box, that's not mine."

On November 22, 1983, after an exhaustive evidentiary hearing, the district court denied Emerick's and Levine's motions to suppress, finding that the search was not invalid under the fourth amendment. The district judge also determined that Glomb, having failed to file a timely motion to suppress, had no standing to object to the search of Levine's package.

On December 6, Glomb entered a conditional plea of guilty to count 1 of the indictment, preserving his right to appeal the order denying his motion to suppress.

### B.

When Glomb appeared before the district court on February 17, 1984, he was sentenced to twelve years confinement plus a $15,000 fine, and ordered to report to the designated federal correctional institution by March 20. Later he received a one-week extension, but failed to appear. He spent the next year as a fugitive. Finally, in July 1985, Glomb was arrested. Meanwhile, in May 1984, the government filed a motion to dismiss Glomb's appeal because of Glomb's failure to report to the designated correctional facility. In July 1984, a panel of the Fifth Circuit dismissed Glomb's appeal. After his capture, Glomb moved to vacate the dismissal of his appeal and to reinstate it. Both motions were denied. Glomb then filed the instant habeas petition under 28 U.S.C. § 2255, seeking relief from his original sentence, on the grounds that (1) he had never received the appeal to which his guilty plea was condi-

tioned, and (2) the FBI's search of Levine's package was unconstitutional on the merits.

The magistrate entered findings, conclusions and recommendations on Glomb's section 2255 motion, and the district court concurred in the magistrate's findings that Glomb's appeal was without merit since he had absconded from justice.

On August 8, 1988, Glomb appealed the district court's decision to this court.

### II

Glomb concedes that his direct appeal was properly dismissed on the authority of *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) ("while an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the court for a determination of his claim"). However, Glomb seizes on the notion that there remains an "adjudicable case or controversy" and asks the Fifth Circuit, now sitting as a court of equity, to review his fourth amendment claim collaterally under *Fay v. Noia*, 372 U.S. 391, 430, 83 S.Ct. 822, 844, 9 L.Ed.2d 837 (1963). Glomb argues that he did not deliberately by-pass his right to assert his fourth amendment claim, and therefore there was no valid waiver under *Fay*, 83 S.Ct. at 849. He asserts that neither the magistrate nor the district court considered the issue of waiver in denying the habeas petition. Since there was no waiver, Glomb argues, we are required by *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), to hear the merits of his fourth amendment claim. In that case the Supreme Court held that a conditional guilty plea premised on the understanding that constitutional claims will be litigated further carries with it a guarantee that judicial review of the constitutional claims will continue to be available to the defendant and the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas proceeding. Finally, Glomb argues that under *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), a court must

indulge every reasonable presumption against waiver of fundamental constitutional rights.

The government focuses not on the right to collateral review via a habeas petition, but on the right to appeal. The government argues that all the cases involving flight from justice, in particular *Joenson v. Wainwright*, 615 F.2d 1077 (5th Cir.1980), make it clear that Glomb abandoned his appeal. In *Joenson*, the court specifically considered whether Joenson had waived his right to appeal and it found that "a criminal defendant abandons his appeal by escaping while the appeal is pending." *Id.* at 1080.

### III

■ The precedents make it clear, and Glomb does not dispute, that appellate courts can properly dismiss *appeals* of fugitive convicts. *See Estelle v. Dorrough*, 420 U.S. 534, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975); *Molinaro*, 90 S.Ct. at 498; *Joenson*, 615 F.2d at 1079; *United States v. Smith*, 544 F.2d 832, 834 (5th Cir.1977). In *Dorrough*, the Supreme Court made it plain that a fugitive has no constitutional right to a reinstatement of an appeal upon his recapture. Thus, there is no question that Glomb has no right of appeal here.

■ The question thus is whether Glomb has a right to have the merits of his fourth amendment claim heard collaterally via this habeas petition. *See Fay*, 83 S.Ct. at 844. As Glomb acknowledges, the answer to that question depends upon whether Glomb validly waived his right to have his fourth amendment claim reviewed, i.e., whether Glomb's flight and failure to report to the prison constitutes a voluntary by-pass of the right to raise issues that could have been raised on direct appeal. When Glomb pled guilty on the express condition that he be allowed to assert his fourth amendment claim on appeal, he acknowledged in open court that he understood the contents of the agreement. After being sentenced in accordance with the plea agreement, Glomb persuaded the court to give him a one-week extension of his reporting date. He then failed to report to the designated correctional facility by March 17, 1984, as required, and remained a fugitive for some sixteen months. The only inference that can be drawn from these facts is that Glomb hoped to evade the authorities permanently and to avoid all future dealings with the criminal justice system. There is certainly no basis to assume, as we would have to do in order to find no waiver of his appeal rights, that Glomb intended to return to the courts to pursue the appeal that he had left behind. Having thus intended to separate himself from the system permanently, it is hard to imagine a more *deliberate* by-pass of the legal rights and remedies that were available to him. His flight, therefore, clearly constituted "an intentional relinquishment or abandonment of a known right or privilege" under *Johnson v. Zerbst*, 58 S.Ct. at 1023, and constitutes a bar to habeas relief under *Fay*. The judgment of the district court is therefore

AFFIRMED.