IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-40172
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDELMIRO DELAGARZA-VILLARREAL,

Defendant-Appellant.
_____

Appeal from the United States District Court for the
Southern District of Texas, McAllen
_____

May 8, 1998

Before WISDOM, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Edelmiro Delagarza-Villarreal ("Delagarza") appeals his convictions for conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana. Delagarza argues that the evidence is insufficient to support the convictions, that he received ineffective assistance of counsel, and that the trial court erred when it refused to grant his motion for a mistrial based upon evidence of government misconduct. This appeal also presents an issue of apparent first impression in this circuit--the scope of the fugitive disentitlement doctrine in the light of the Supreme Court's opinion in Ortega-Rodriguez v. United States. 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). We

decline to apply the doctrine in this instance to dismiss Delagarza's appeal. We instead affirm the conspiracy conviction and reverse the conviction for possession because of insufficient evidence that Delagarza aided and abetted any co-conspirator's possession of marijuana.

I

This case arises from a reverse-buy sting operation. In March 1994, Delagarza asked Jorge Guajardo-Benavidez ("Guajardo"), an acquaintance of Delagarza's for more than ten years, to broker a marijuana transaction. Delagarza had several prospective purchasers and Guajardo had connections--one of whom, unbeknownst to him, was an informant. Guajardo contacted the informant to set up the transaction and a meeting was arranged between Guajardo, and the informant, and the Mexican drug supplier, "Juan Fonseca," who was in fact an undercover officer.

At the meeting, Guajardo inspected a sample of marijuana--a 4½ pound "brick"--and, based upon the sample, struck a deal for a 500-pound purchase at $250 per pound with a $40,000- to $60,000-down payment, with the remainder due in two weeks. Guajardo suggested that the transaction take place at a "stash house" on Sprague Street in Edinburg, Texas, a location selected by Delagarza. The men attempted to do the deal the following day, March 31, 1994, but Delagarza's purchasers had suddenly departed. They agreed to try again later.

On April 18, 1994, Delagarza met with Guajardo and told him that his purchasers had returned to town and they could complete the drug deal. Guajardo and Delagarza agreed to meet later after Guajardo had contacted the undercover officer. Guajardo and the officer met at a K-Mart parking lot and agreed on a 500-pound delivery. Guajardo then returned to the Sprague Street stash house, where he found Delagarza with Norberto De La Rosa and Felipe Clemente Munoz--the buyers. All three men joined Delagarza in his vehicle and proceeded to rendezvous with the undercover officer at the K-Mart parking lot.

The undercover officer, who carried a hidden wire, recorded the meeting on audiotape. Guajardo approached the undercover officer and told him that the money was there. Both men then returned to Guajardo's vehicle. The undercover officer asked how much money they had and De La Rosa answered "Cuarenta" (meaning $40,000). De La Rosa then asked if the marijuana was "guaranteed" and Munoz displayed the cash contained in a towel. Delagarza inquired whether the weed was of good quality, specifically, if the marijuana was "green." The officer answered affirmatively that the drug was "pino" or green.

Upon confirmation that the marijuana was to be delivered to the Sprague Street stash house, the undercover officer gave the "bust signal" and arrested all four men--Guajardo, Delagarza, De La Rosa, and Munoz. The authorities seized exactly $40,000.

II

Delagarza, Guajardo, De La Rosa, and Munoz were all charged in a two-count indictment for conspiracy to possess with intent to distribute and possession with intent to distribute marijuana. The three co-defendants pled guilty, but Delagarza elected for trial. The case began on August 9, 1994, and two days later, Delagarza absconded during a court recess. A warrant was issued for his arrest, and the trial went forward.

Meanwhile, the prosecutor learned that the case agent had held a brief, unauthorized conversation with two jurors, discussing his educational background, job experience, personal on-the-job safety, and law enforcement corruption. The prosecutor advised the court of these happenings and the court interviewed the two jurors, discussed the communications with the entire panel, dismissed the two conversationalists, and replaced them with two alternates. The case proceeded against Delagarza in absentia, and the jury returned a guilty verdict as to the two charges on August 15, 1994. A sentencing date was set two months later, but Delagarza failed to show.

Co-defendants De La Rosa and Munoz moved to withdraw their guilty pleas during Delagarza's absence in the spring of 1995. A superseding indictment was handed down against them and a jury selected for the upcoming trial. Before trial began, however, the two defendants opted to withdraw their motions to withdraw their guilty pleas and abide by the terms of their original plea

agreements.  Guajardo, De La Rosa, and Munoz were sentenced on March 27, 1996.  None appealed.

Authorities recaptured Delagarza on April 23, 1996, and returned him to the custody of the trial court.  The court sentenced him on August 7, 1996, to serve two concurrent 120-month terms of imprisonment for the drug convictions followed by a consecutive one-day sentence for his failure to appear conviction.[1]  Delagarza timely appealed.

### III

As an initial matter, we address the government's request that we invoke our discretion and employ the fugitive disentitlement doctrine to dismiss Delagarza's appeal without reaching the merits.

It is generally accepted that circuit courts have the authority to fashion procedural rules governing the management of litigation before them.  Ortega-Rodriguez v. United States, 507 U.S. 234, 252, 113 S.Ct. 1199, 1210, 122 L.Ed.2d 581 (Rehnquist, C.J., dissenting) (1993).  Specifically, the Supreme Court recognized almost thirty years ago that an appeal may be dismissed if the appellant becomes a fugitive from justice while his appeal is pending.  Molinaro v. New Jersey, 396 U.S. 365, 365-66, 90 S.Ct. 498, 498-99, 24 L.Ed.2d 586 (1970) (coining doctrine of disentitlement); United States v. DeValle, 894 F.2d 133, 134, 138 (5th Cir. 1990) ("As a general matter, willful flouting of the

---

[1]Delagarza had previously pled guilty to a superseding indictment for his failure to appear.

judicial system on the part of one seeking appellate redress should not go wholly unrecognized."); <u>United States v. Glomb</u>, 877 F.2d 1, 3 (5th Cir. 1989). Since then, we have incrementally expanded the rule to allow dismissal when the fugitive is captured before the motion to dismiss the appeal is ever filed, and, even further, this circuit has held that the appellate court retains the discretion to dismiss an appeal when the appellant's fugitive status commences before the filing of an appeal. <u>DeValle</u>, 894 F.2d at 136. In fact, the case law could be read to condone dismissal even though recapture may occur before the appellate process is invoked. <u>Id.</u> (noting dismissal may be appropriate "at least as to trial proceedings completed before the appellant became a fugitive.").

The Supreme Court, however, curtailed the application of the fugitive disentitlement doctrine in its 1993 <u>Ortega-Rodriquez</u> opinion. <u>See</u> 507 U.S. at 249-51, 113 S.Ct. at 1208-10. The facts then before the Court closely mirror those before us now. The defendant had fled the jurisdiction of the district court after conviction, but was apprehended before sentencing and appeal. The Eleventh Circuit, without addressing the merits of the appellant's arguments, dismissed the appeal under the fugitive disentitlement doctrine. The Supreme Court granted certiorari to determine the proper reach of the doctrine.

The Court initially acknowledged that "dismissal by an appellate court after a defendant has fled **its** jurisdiction serves an important deterrent function and advances an interest in

-6-

efficient, dignified appellate practice."  Ortega-Rodriguez, 507 U.S. at 242, 113 S.Ct. at 1204-05 (emphasis added).  Noting that the justifications advanced for allowing dismissal all assume that a sufficient connection exists between the defendant's fugitive status and the appellate process so as to make dismissal a reasonable sanction, the Court turned to examine the basis for that assumption when a fugitive is recaptured before the appellate process begins.  Id. at 243-45, 113 S.Ct. at 1205-06.

The Court first noted that the risk of unenforceability of an appellate court's judgment is nonexistent if the defendant is in custody when he begins the appellate process.  Id. at 244, 113 S.Ct. at 1206.  Similarly, the "efficient operation" of the appellate process generally will not have been interrupted by a fugitive's absconding when the fugitive files an appeal after recapture.  Id. at 245, 113 S.Ct. at 1206 (noting that court that faces "additional trouble" is "the court before which the case is pending at the time of escape").  Similarly, the fugitive's flight from the district court's jurisdiction affronts the dignity of the district court--not that of the appellate court--and the trial court has available to it adequate sanctioning authority to defend its own dignity.  Id. at 245-46, 113 S.Ct. at 1206-07. Because the trial court "is quite capable of defending its own jurisdiction," the *district court* may fashion an appropriate punishment to deter escape.    Deterrence    from    escape    of    the    district    court's jurisdiction thus fails to withstand scrutiny as a justification

for *appellate* dismissal when recapture occurs before the appellate process is invoked.  Id. at 247, 113 S.Ct. at 1207.

Thus, the Court concluded that

while dismissal of an appeal pending while the defendant is a fugitive may serve substantial interests, the same interests do not support a rule of dismissal for all appeals filed by former fugitives, returned to custody before invocation of the appellate system. ***Absent some connection between a defendant's fugitive status and his appeal***, as provided when a defendant is at large during "the ongoing appellate process," . . . the justifications advanced for dismissal of fugitives' pending appeals generally will not apply.

Id. at 249, 113 S.Ct. at 1208 (emphasis added).

The Court, however, did not completely disembowel an appellate court's authority to apply the disentitlement doctrine when a defendant's fugitive status predates the appeal.  Id., 113 S.Ct. at 1208.  For instance, if a long escape would so prejudice the government at retrial after a fugitive's successful appeal, employment of the doctrine may be appropriate.[2]  Id., 113 S.Ct. at 1208.  Similarly, a defendant's flight that prevents the appellate court from consolidating his appeal with that of his co-defendants could justify application of the dismissal rule, ***if*** the appellate court were to determine that the inability to consolidate worked a "significant interference with the operation of its appellate

---

[2]The Court specifically noted, however, that an appeal successfully premised on insufficiency of the evidence would fall outside that class of cases.  Irrespective of the prejudice to the government, a defendant may not be retried if he wins under that argument.  507 U.S. at 249, 113 S.Ct. at 1208.  Delagarza presents arguments premised on insufficiency of the evidence, but also on ineffective assistance of counsel and failure to grant a mistrial.

process." Id. at 250, 113 S.Ct. at 1209. Finally, the Court declined to require a case-specific analysis, but provided that appellate courts may fashion generally applicable rules to apply to specific, recurring situations. Furthermore, the circuits need not operate in uniformity in their promulgation of fugitive dismissal rules. Id. at 250-51 nn.23 & 24, 113 S.Ct. at 1209 nn.23 & 24.

This appeal presents this Circuit's first opportunity to offer our interpretation of Ortega-Rodriquez. The government maintains that it will be unduly prejudiced should Delagarza succeed in his appeal and this action be remanded for a new trial. The audio taped conversations of Delagarza and his co-defendants along with the "brick" of marijuana have since been destroyed, and the $40,000 has been forfeited to state authorities. The government also contends that it already has been unduly prejudiced by Delagarza's fleeing because the co-defendants, who had initially pled guilty, attempted to withdraw their pleas when Delagarza fled.

Notwithstanding the government's arguments, however, we must conclude that the alleged prejudice to the government will not suffice to support dismissal of Delagarza's appeal. First, the government failed sufficiently to demonstrate that the "brick" of marijuana would not have been destroyed nor the $40,000 forfeited to the state absent Delagarza's fugitive status. Second, should Delagarza succeed on his insufficiency of the evidence arguments, this action will not be remanded for a new trial. The Supreme Court laid down a specific rule that prejudice to the government at

retrial may not be utilized as a factor favoring dismissal of the appeal when the fugitive defendant's argument concerns sufficiency of the evidence, simply because success on an insufficiency of evidence argument would not result in retrial.[3]

Additionally, the government made no attempt to tie the co-defendants' decisions to withdraw their guilty pleas to Delagarza's absence. There is no evidence before this court that De La Rosa and Munoz attempted to withdraw their guilty pleas because of Delagarza's fugitive status. We do not mean to place a significantly heavy burden on the prosecution to demonstrate prejudice before application of the disentitlement doctrine may be imposed. We simply hold that, whatever the burden may be, the government did not meet it in this instance.

The government also suggests that the long delay of the instant appeal, occasioned by Delagarza's fugitive status, unnecessarily burdened this court's appellate process. We cannot say, however, that the delay in this case *significantly interfered* with our judicial process. See Ortega-Rodriquez, 507 U.S. at 250, 113 S.Ct. at 1209. Again, it is important to note what we are *not* holding: We are *not* holding that delay occasioned by a defendant's fleeing may never work a significant interference with our court system so as to justify dismissal. We are holding only that the delay in this case fails to meet that standard.

---

[3]See supra note 2.

Finally, the government maintains that dismissal is proper because Delagarza's fugitive status created the **potential** for separate appeals. Although the three co-defendants who pled guilty did not appeal, the government argues that they could have done so and this court could not have consolidated all of the defendants' appeals because of Delagarza's absence. For instance, the government maintains that the three co-defendants' appeals could have been consolidated had they appealed, but, in such a situation, Delagarza, because of his fugitive status, would have been afforded his own separate appeal absent application of the disentitlement doctrine. Thus, the government suggests that we develop a general rule allowing dismissal of any fugitive defendant's appeal when that defendant has been tried and convicted with one or more co-defendants who could have appealed from their own convictions or sentences.

It is true that the Supreme Court specifically noted that a defendant's flight that worked a significant interference with the appellate process by preventing the appellate court from consolidating his appeal with those of his co-defendants could justify application of the dismissal rule. In this case, however Delagarza's co-defendants did not appeal and we are unable to hold that affording Delagarza an appeal works a "significant interference" with our normal appellate practice. We are thus constrained to hold that the mere *potential* interference with our consolidation process presented here does not meet the requisite

-11-

test for demonstrating "some connection between [the] defendant's fugitive status and his appeal." The prosecution's motion to dismiss shall be denied.

## IV

### A

Turning to the merits of the appeal, Delagarza initially argues that the evidence is insufficient to support his conviction for conspiracy to knowingly and intentionally possess with intent to distribute a controlled substance. He contends that there is no evidence that he made any arrangements to purchase the marijuana and that the uncorroborated testimony of an alleged co-conspirator does not prove his guilt beyond a reasonable doubt. The government maintains, however, that all of the evidence, including Guajardo's testimony, sufficiently supports the conviction.

### (1)

When evaluating an insufficiency claim, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the government to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[4] United States v. Greer, 137

---

[4]We employ this standard of review because Delagarza preserved his insufficient evidence claim by moving for a judgment of acquittal at trial. United States v. Sneed, 63 F.3d 381, 385, n.2 (5th Cir. 1995), cert. denied, 516 U.S. 1048, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996); see United States v. Galvan, 949 F.2d 777, 782-83 (5th Cir. 1991) (reviewing for "manifest miscarriage of justice" because defendant failed to move for directed verdict or judgment of acquittal).

F.3d 247, 249 (5th Cir. 1998) (citing <u>United States v. Bell</u>, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), <u>aff'd</u>, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)); <u>United States v. Burton</u>, 126 F.3d 666, 669-70 (5th Cir. 1997). "'The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence.'" <u>Burton</u>, 126 F.3d at 669-70 (quoting <u>United States v. Bermea</u>, 30 F.3d 1539, 1551 (5th Cir. 1994)). Our review does not change irrespective of whether the evidence is direct or circumstantial. <u>Burton</u>, 126 F.3d at 670. What we may not do is reweigh the evidence or assess the credibility of the witnesses, but instead we must "'accept all credibility choices that tend to support the jury's verdict.'" <u>Sneed</u>, 63 F.3d at 385 (quoting <u>United States v. Anderson</u>, 933 F.2d 1261, 1274 (5th Cir. 1991)); <u>United States v. Lopez</u>, 74 F.3d 575, 577 (5th Cir.), <u>cert. denied</u>, ___ U.S. ___, 116 S.Ct. 1867, 134 L.Ed.2d 964 (1996).

(2)

To prove a drug conspiracy in violation of 21 U.S.C. §§ 841 and 846, the government must present evidence demonstrating beyond a reasonable doubt (1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) that the defendant knew of the agreement, and (3) that he voluntarily participated in

-13-

the agreement.[5]  United States v. Maltos, 985 F.2d 743, 746 (5th Cir. 1992) (citing United States v. Gallo, 927 F.2d 815, 820 (5th Cir. 1991)).  The government is not required to make its case through direct evidence, but "[t]he agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the 'development and collocation of circumstances.'"  Maltos, 985 F.2d at 746 (quoting United States v. Lentz, 823 F.2d 867, 868 (5th Cir.) (quoting United States v. Vergara, 687 F.2d 57, 61 (5th Cir. 1982)), cert. denied, 484 U.S. 957, 108 S.Ct. 354, 98 L.Ed.2d 380 (1987)).

The defendant's mere presence at the crime scene is alone insufficient to support a reasonable inference that he is a participant in the conspiracy.  United States v. Chavez, 947 F.2d 742, 745 (5th Cir. 1991).  Presence and association, along with other evidence, however, are factors that may be considered by the jury in finding conspiratorial participation.  Id.

The record contains ample evidence supporting the jury's finding beyond a reasonable doubt that Delagarza knew about and voluntarily participated in a drug conspiracy.  Guajardo testified that he sought to buy marijuana from the informant at Delagarza's

---

[5]Delagarza argues that the government failed to prove an overt act in furtherance of the conspiracy.  No proof of an overt act is required in order to obtain a conviction for conspiracy to possess a controlled substance with the intent to distribute it.  United States v. Bermea, 30 F.3d 1539, 1551-52 (5th Cir. 1994), cert. denied, 513 U.S. 1156, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995); United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989).

request and that a connection existed between Delagarza and the stash house on Sprague Street.  Delagarza actively participated in discussions with the undercover officer before the drug deal was consummated and he was present when the participants decided to make the drugs-for-money exchange at the Sprague Street residence. We find unpersuasive Delagarza's sufficiency argument with respect to his conviction for conspiracy.

B

Delagarza argues more persuasively that the evidence is insufficient to support his conviction for possession with intent to distribute marijuana, the substantive count of which he was convicted.  To obtain a conviction for possession with intent to distribute, the government must prove that the defendant: (1) knowingly (2) possessed a controlled substance (3) with intent to distribute it.  United States v. Gonzales, 121 F.3d 928, 936 (5th Cir. 1997); Lopez, 74 F.3d at 577 (citing United States v. Diaz-Carreon, 915 F.2d 951, 953 (5th Cir. 1990)).  The government proceeded against Delagarza under an aiding and abetting theory-- that is, that he aided and abetted Guajardo in possessing marijuana with the intent to distribute it.

A defendant may be convicted of aiding and abetting a substantive criminal offense "when he associates with the criminal activity, participates in it, and acts to help it succeed." Gonzales, 121 F.3d at 936.  "A conviction for aiding and abetting the possession of a controlled substance with intent to distribute

does not require that [the defendant] have actual or constructive possession of the drug. It only requires that [he] associate himself with the venture, and participate in a way calculated to bring about that venture's success." United States v. Pena, 949 F.2d 751, 755-56 (5th Cir. 1991). Here, Delagarza must have aided and abetted "both the possession of the drug and the intent to distribute it." United States v. Williams, 985 F.2d 749, 753 (5th Cir. 1993). We may uphold the conviction even if Delagarza never had actual or constructive possession of the marijuana. Gonzales, 121 F.3d at 936; Williams, 985 F.2d at 753. While Delagarza himself need not have actually or constructively possessed the marijuana in order to sustain his conviction, at least one of his co-defendants must have had such possession. United States v. Lindell, 881 F.2d 1313, 1322-23 (5th Cir. 1989) (noting defendant's actions "facilitated *the possession by others* of marihuana with the intent to distribute.").

The government contends that co-defendant Guajardo's "possession" of the sample 4½ pound brick of marijuana when he inspected it for its quality, along with evidence of Delagarza's active participation and presence at the drug negotiations, suffices to support Delagarza's conviction. Although the evidence easily supports a reasonable juror's finding that Delagarza aided and abetted an intention or plan to distribute marijuana once it was possessed, the evidence will not support a finding that he aided and abetted the possession of marijuana. The simple fact is

that Guajardo never possessed the 4½ pound sample.  Based on the evidence in the record before us, no rational trier of fact could have so found.  The only evidence in the record is that the undercover agent "handed Guajardo a sample of marihuana . . . for his inspection" during the negotiations.  Guajardo's mere inspection in this instance does not constitute possession, especially when Guajardo did not purchase the brick and returned it to the undercover agent.  Inasmuch as the record will not support possession by Guajardo, Delagarza did not aid and abet the possession of the marijuana brick and his aiding and abetting conviction must thus be overturned.

C

As his third point of error, Delagarza argues that he received ineffective assistance of counsel at trial in violation of the Sixth Amendment.  Delagarza raises this issue for the first time on appeal.  As a general rule of practice, we will not address on direct appeal ineffective assistance claims not presented to the district court.  United States v. Chavez-Valencia, 116 F.3d 127, 133-34 (5th Cir. 1997); United States v. Gaytan, 74 F.3d 545, 557 (5th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996); United States v. Packer, 70 F.3d 357, 361 (5th Cir. 1995) (quoting United States v. Navejar, 963 F.2d 732, 735 (5th Cir. 1992)), cert. denied, ___ U.S. ___, 117 S.Ct. 75, 136 L.Ed.2d 34 (1996); United States v. Fry, 51 F.3d 543, 545 (5th Cir. 1995).  We grant an exception to this rule "only in rare cases where the

record allow[s] us to fairly evaluate the merits of the claim." <u>Navejar</u>, 963 F.2d at 735.

Delagarza maintains that his trial attorney failed to object to numerous hearsay statements and to the admission into evidence of several extraneous offenses of his co-conspirators. The district court held no hearing on the matter to develop the facts and the record does not provide sufficient detail about the attorney's conduct to allow us to make a fair evaluation of the merits of Delagarza's claim. We thus deny Delagarza's appeal on this ground without prejudice to his ability to raise it collaterally in a habeas corpus proceeding.

D

In his final point of error, Delagarza maintains that his Fourteenth Amendment rights were violated "by the intentional acts of government agents." While the trial was ongoing, two sitting jurors approached the case agent and engaged in a five- to fifteen-minute conversation with him. Their inquiries did not concern the specifics of the trial, but instead indicated their curiosity with certain aspects of the agent's occupation. Delagarza's trial counsel requested a mistrial, but the district judge denied the motion, dismissed the two jurors from the panel, and replaced them with two alternates. Although trial counsel indicated his satisfaction with the remaining jurors' retention on the panel and did not renew the motion for mistrial, Delagarza now argues that the officer's conduct was so outrageous that it

violated his right to a fair trial and we should thus dismiss the charges against him.[6]

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial. . . . The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

Denman, 100 F.3d at 405 (quoting Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed.2d 654 (1954)). The trial court must conduct a hearing after receiving notice of such communication to determine the underlying circumstances, the impact

---

[6]The government maintains that Delagarza has not appealed the denial of his motion for mistrial and, thus, that he has waived that issue. United States v. Denman, 100 F.3d 399, 405 (5th Cir. 1996) ("We review for abuse of discretion a trial judge's denial of a motion for mistrial based on allegations of improper extrajudicial conduct by jurors."); United States v. Almeida-Biffi, 825 F.2d 830, 833 (5th Cir. 1987), cert. denied, 485 U.S. 1010, 108 S.Ct. 1478, 99 L.Ed.2d 706 (1988). Applewhite v. Reichhold Chemicals, Inc., 67 F.3d 571, 573 (5th Cir. 1995) (noting failure to brief and argue issue constitutes waiver). Because Delagarza did not raise this argument with the district court, according to the government, we review for plain error. United States v. Wilson, 116 F.3d 1066, 1085 (5th Cir. 1997); Fed.R.Crim.P. 52(b). Plain error is "'error so obvious and substantial that failure to notice it would affect the fairness, integrity, or public reputation of the judicial proceedings and would result in manifest injustice.'" United States v. Johnson, 127 F.3d 380, 393 (5th Cir. 1997) (quoting United States v. Reyes, 102 F.3d 1361, 1364 (5th Cir. 1996)). In his brief, however, Delagarza lists as his fourth issue that "[t]he trial court erred in not granting a motion for mistrial upon receiving evidence that one of the Government's witness [sic] had conversed with jury members outside of the courtroom . . . ." As is evident from our discussion, however, Delagarza's appeal on this ground is meritless irrespective of the standard of review.

of the contact on the juror, and if prejudice resulted.  Id.  Our cases set out a two-pronged inquiry: (1) whether the challenged interchange was about the matter pending before the jury, and (2) whether the defendant was prejudiced by the discussion.  Id.

The district court conducted an adequate investigation into the case agent's conversation with the two jurors.  Before dismissing them, the judge interviewed the two jurors and determined that the topic of their communication with the agent was unrelated to the trial and, although certainly improper, resulted in no prejudice to Delagarza.  The court further questioned the remaining jurors as to whether they had communicated with the dismissed jurors.  None had and the court properly replaced the dismissed jurors with alternates and allowed the trial to continue.  Whether we review for plain error or abuse of discretion, Delagarza's appeal on this issue is without merit and is denied.

V

For the foregoing reasons, we reverse Delagarza's conviction for possession with intent to distribute marijuana and affirm his conviction for conspiracy to possess with intent to distribute marijuana.

MOTION TO DISMISS DENIED;
AFFIRMED in part; REVERSED in part; and
REMANDED for RESENTENCING.