**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**John Jay BEATTIE, Nathaniel Mack Burton, Defendants, Appellants.**

Nos. 77–3805, 78–1259.

United States Court of Appeals,
Ninth Circuit.

April 17, 1979.

---

Paul G. Sloan, Freidman, Shaw, Kipperman & Sloan, San Francisco, Cal., for defendants, appellants.

John Lockie, Asst. U. S. Atty., San Francisco, Cal., for plaintiff, appellee.

Before BROWNING and KENNEDY, Circuit Judges, and DUMBAULD *, District Judge.

DUMBAULD, District Judge:

Defendant Burton owned a furniture store. Defendant Beattie was a loan officer of a bank. A scheme was devised by them pursuant to which numerous persons buying furniture at Burton's store were given blank forms to obtain loans and open a "balance plus" account at the bank. The customers signed in blank and defendants inserted false information (such as overstating the customer's income) so that the papers would appear to be in order at the bank. The loans exceeded the price of the furniture, and the proceeds were shared by defendants.[1] Most of the loans were subsequently charged off by the bank as uncollectible.

Defendant Beattie was convicted on eight counts of wilful misapplication of bank funds in violation of 18 U.S.C. 656,[2] and,

---

* The Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The papers signed in blank by the customers included checks enabling proceeds from the loans to be initially channeled to defendant Burton's bank account.

2. "Whoever, being an . . . employee of . . . any . . . bank . . . willfully misapplies any of the moneys, funds or credits of such bank . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both; . . ."

along with defendant Burton, was convicted under the general conspiracy statute, 18 U.S.C. 371,[3] of conspiracy to misapply wilfully funds of the bank. Each of the 24 misapplication counts against Beattie in the indictment contained an allegation that said defendant "with intent to defraud and injure" the bank "did wilfully and knowingly misapply or caused to be misapplied monies" of the bank in that said defendant did cause a specified loan to be made by the bank to a specified individual "knowing that [such individual] was not the actual beneficiary of the loan."

■ The indictment is therefore adequate, and defendants' motions to dismiss were properly denied. When 18 U.S.C. 656 was revised in 1948, the words "intent to injure and defraud" in the predecessor statute were omitted (perhaps inadvertently, as the revisers' proposed intention was not to change the meaning of existing law) but the courts have held that such intent remains an essential element of the crime proscribed in § 656 and must be proved. *Ramirez v. U. S.*, 318 F.2d 155, 157–58 (9th Cir. 1963). The indictment in the case at bar specifically complies with that standard. *Ramirez* also held that diversion to A of proceeds of a loan purportedly made to B is a sufficient conversion of bank funds to constitute violation of § 656, and defendants' reliance on *U. S. v. Wiggenhorn*, 312 F.2d 289 (9th Cir. 1963) is misplaced. See 318 F.2d at 158, and *U. S. v. Kennedy*, 564 F.2d 1329, 1339 (9th Cir. 1977).

■ Likewise the conspiracy count of the indictment is good. It is brought under the general conspiracy statute which punishes conspiracy "to commit any offense against the United States." In the indictment here the "offense against the United States" charged against defendants is specifically

identified as "wilful misapplication" of bank funds, in violation of 18 U.S.C. 656. The mode or manner of misapplication charged is set out at length in subparagraphs numbered A through G. In addition to these particularized factual allegations, defendants were placed on notice that violation of 18 U.S.C. 656 was charged, and hence that intent to defraud and injure the bank was involved, as explained in the preceding discussion of the substantive counts of the indictment. We conclude therefore that the indictment is good, both with respect to the substantive counts and the conspiracy count.

However, defendants advance a more persuasive argument with respect to the admission of prejudicial evidence at the trial.

As the last witness, at the end of the trial, the government recalled Frank Lumsden the bank auditor who testified that the bank charged off as a loss $315,000 on 173 loans approved by defendant Beattie.

The witness did not testify that this number of loans and this amount of loss to the bank arose from loans involving purchases of furniture at defendant Burton's store. In fact the loss on Burton loans amounted to $17,000 and the larger figure included other loans by the bank which defendant Beattie handled.

■ The prosecuting attorney in his argument emphasized that "there were approximately 200 Burton-related loans" with a "charge-off loss to the bank, approximately $309,000."[4] Although the charge of the court pointed out that this evidence was applicable only to defendant Beattie, yet it would inevitably affect the jury's thinking on the conspiracy charge when the court failed to point out that it related to other loans made by Beattie, and not simply to

---

**3.** This statute provides that "If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

**4.** After the charge-off of $315,000 the bank subsequently collected $6000.

Burton-related loans, as the government argued. It is impossible to regard the admission of testimony concerning this substantial amount of loss to the bank as harmless error.

The government seeks to justify admission of this evidence by arguing that it showed plan, scheme, design, or *modus operandi.* Federal Rules of Evidence, Rule 404(b). This appears to be an afterthought, first mentioned during the prosecutor's argument to the jury. In any event, the purpose thus assigned would have been adequately proved by evidence relating to the twenty-four instances set forth in the substantive counts; and any cumulative probative value would be overweighed by the prejudicial effect of the evidence. Rule 403.

The government also argues that defendant Beattie opened the door to this testimony by his own testimony that he was an aggressive, valuable loan officer, who increased the bank's profit by making some doubtful loans rather than by adopting a conservative policy of making only loans with negligible risk. Here, too, the harm to the defendants would seem to outweigh the advantage to the government of rebutting this collateral issue, which in reality was not much of a defense, since the offense charged was diversion of bank funds for illicit profit, rather than risking the bank's funds in dubiously collectible loans. Even if the defendants had been able to persuade the ostensible borrowers to pay off the loans in full [5] so that there would have been no ultimate loss whatever to the bank, nevertheless the crime charged would have been committed. We conclude that the prejudicial evidence was erroneously received, and resulted in harm to both defendants.

Since, therefore, there must be a new trial, we refrain from consideration of defendants' other contentions (regarding alleged variance between *allegata* and *probata*). The posture of the case with respect to these matters will no doubt be different after retrial and if the questions are still viable may more properly be considered at that time, in the light of the actual state of the record as developed at the new trial.

The judgment of the District Court is reversed and the case remanded for a new trial.

---

**5.** Receiving as *quid pro quo,* perhaps, some additional furniture which they really did not want to buy.