

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-2002

# USA v. Ragbir

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3745

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Ragbir" (2002). *2002 Decisions*. Paper 331.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/331

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-3745
_____

UNITED STATES OF AMERICA

v.

RAVIDATH RAGBIR,
                              Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Crim. No. 00-cr-00121-2
District Judge:  The Honorable William G. Bassler
_____

Submitted Under Third Circuit LAR 34.1(a)
June 7, 2002
_____

Before: NYGAARD, BARRY, and MAGILL, Circuit Judges

(Opinion Filed: June 7, 2002)
_____

OPINION
_____


BARRY, Circuit Judge

Following a jury trial, appellant Ravidath Ragbir was convicted of one count of conspiracy to commit wire fraud in violation of 18 U.S.C.   371 and six counts of wire fraud in violation of 18 U.S.C.    1343 and 2.  After an unsuccessful post-trial motion for a judgment of acquittal or for a new trial, Ragbir was sentenced to thirty months of imprisonment and three years of supervised release and ordered to pay $350,001 in restitution.  Ragbir appeals his convictions and sentence.  We have jurisdiction pursuant to 28 U.S.C.   1291 and will affirm.

Ragbir begins by attacking the District Court's order admitting his statement given to West Orange police officers on July 27, 1999.  We exercise plenary review of the District Court's determination that this statement, which was a confession, was made voluntarily and accept the Court's factual findings unless clearly erroneous.  See United States v. Swint, 15 F.3d 286, 288 (3d Cir. 1994).  A confession is voluntary if, upon an examination of the totality of the circumstances, it is the product of free will and not police overreaching.  Id. at 289 (citations omitted).

An examination of the circumstances surrounding Ragbir's confession reveals that it was voluntary.  At the time he confessed, he had not been arrested or charged with any crimes.  According to Detective Louis Mignone's testimony at the suppression hearing, Ragbir admitted his criminal involvement within minutes after Detective Mignone and James Houlihan, a Household Finance Corporation ("HFC") fraud investigator, entered the interview room where he had been waiting.  At that point, Detective Mignone stopped the interview, escorted Ragbir into the detective bureau, and read him his Miranda rights from a preprinted form.  Ragbir then signed a written waiver of those rights.  Thereafter, Detective Mignone began questioning Ragbir, with a secretary

contemporaneously recording the questions and answers into a computer. Ragbir was seated in a chair next to the secretary's desk and was able to see the computer screen as the secretary typed. After the questioning ceased, he was presented the typed statement for his review, revision, and signature. He signed and dated the statement in the presence of Detective Mignone and Houlihan. No police overreaching appears on these facts.

Ragbir counters that the District Court's reliance on Detective Mignone's testimony at the suppression hearing was flawed. Specifically, he asserts that the Court did not but should have credited the testimony of Mark Farnese, an unindicted coconspirator. We will not review the District Court's credibility determination. United States v. Bethancourt, 65 F.3d 1074, 1078 (3d Cir. 1995).

Ragbir next attacks the District Court's denial of his motion for a new trial after codefendant Robert Kosch pleaded guilty following the third day of their joint trial. We review for abuse of discretion. United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). It is not the rule that a mistrial must be declared if a codefendant pleads guilty after the start of trial. See United States v. Gambino, 926 F.2d 1355, 1364 (3d Cir. 1991) (district court did not abuse its discretion by permitting testimony from witness who started the trial as a defendant but pleaded guilty halfway through). Generally, jury instructions are sufficient to eliminate any potential prejudice to the remaining defendants that might arise from the mid-trial dismissal of a codefendant. See, e.g., United States v. Daniele, 886 F.2d 1046, 1055 (8th Cir. 1989); United States v. Almeida-Biffi, 825 F.2d 830, 833 & n.2 (5th Cir. 1987); United States v. Barrientos, 758 F.2d 1152, 1155-56 (7th Cir. 1985). We presume that juries follow courts' instructions. Jermyn v. Horn, 266 F.3d 257, 312 (3d Cir. 2001).

Here, the District Court instructed the jury not to consider in any way Kosch's absence:

You'll notice that neither Mr. Robert Kosch nor his attorney, Mr. DeGroot, are seated at the defense table. They will be absent from this court for the remainder of the trial. I instruct you that the charges against Robert Kosch are no longer part of the Government's case and they are not to be considered by you at the time of your deliberations. You should not speculate or concern yourselves about the reason for the absence of Mr. Kosch.

You are not to consider his absence in any way when you hear the rest of this case or when you deliberate on a verdict as to Mr. Ragbir. The Government has an absolute obligation under the United States Constitution to prove every element of every offense charged against Mr. Ragbir beyond a reasonable doubt. Again I instruct you emphatically that in considering the evidence as to Mr. Ragbir, you shall not take into account the absence of Mr. Kosch. To do otherwise would be to violate your oaths as jurors.

App. at T786-87. The District Court's instructions cured any potential prejudice to Ragbir. Accordingly, the Court did not abuse its discretion in denying Ragbir's motion for a new trial.

Ragbir also challenges the District Court's ruling at trial to admit under Federal Rule of Evidence 403 evidence of fraudulent loans not listed in the Second Superseding Indictment. We review the District Court's ruling for abuse of discretion. Becker v. ARCO Chem. Co., 207 F.3d 176, 180 (3d Cir. 2000). There is no such abuse here. As charged in the Second Superseding Indictment, Ragbir intentionally processed false mortgage loan applications in furtherance of his scheme with Kosch without conducting the required background checks. At trial, the government sought to introduce evidence of false loan applications processed by Ragbir in the names of Colon, Jurschen, and Liaci during the period of the conspiracy. These loans were named in Ragbir's July 27, 1999 confession, which was already in evidence. The District Court reasonably concluded that the evidence had a tendency to prove the falsity of the loan applications and thereby the existence of a scheme to defraud HFC through false loan applications. The Court also reasonably concluded that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice to Ragbir. Indeed, it characterized the evidence as "the standard bread-and-butter type of evidence the Government puts in every type of case." App. at T781. We agree.

Following the trial, Ragbir moved for a judgment of acquittal or for a new trial because the jury's verdict was not supported by sufficient evidence. He claims the District Court improperly denied his motion. A judgment of acquittal is appropriate "[o]nly when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989) (quoting Brandom v. United States, 431 F.2d 1391, 1400 (7th Cir. 1970)).

There is sufficient evidence in the record before us to support Ragbir's convictions. First and foremost, his July 27th and 28th statements make quite clear that he agreed with Kosch to obtain money from HFC through the use of false loans and that such money was, in fact, obtained. For example, in his July 27th statement, Ragbir recounts:

> He [Kosch] told me that he wanted me to do business with him through my company [HFC] and set up real estate loans for people that he would send to me as referrals. He told me that he wanted to get the money from the loans and would send people to me to use false names and information and offered to me one point of each loan. One point is one-percent of the dollar amount of each loan. I told him that I would do it for him.

App. at 112. Later in that statement, Ragbir lists twenty-one different loans that he fraudulently submitted under his arrangement with Kosch. Ragbir's statement of July 28th similarly confirms the conspiracy:

> He [Kosch] is the guy that was running the whole scheme through me at my job Household Finance between December 1998 and now. He has organized the filing of 1.5 million dollars worth of fraudulent loans by using me to process the loans through Household Finance and allow others to assume false identities to apply for the loans.

App. at 115. In addition to Ragbir's statements, the government introduced into evidence the false loan applications processed by Ragbir, closing documents, supporting documents, and loan checks.

Testimony from coconspirators confirmed that the applications contained false information and that the closing documents were forged. Specifically, Gina Cofone, a coconspirator, testified that she met with Ragbir at HFC to complete the required loan documents at which time she impersonated Mary Mays and forged Mays's signature on the documents. According to Cofone, Ragbir knew her true identity at the time she signed the documents. Mays died before trial, but her daughter testified that her mother had never obtained a loan from HFC and had never signed any loan documents. Next, Janice Cubellis, also a coconspirator, testified that she met with Ragbir at HFC to sign loan documents as Marie Childs, and that Ragbir became aware of her true identity before the loan transaction was completed. At trial, the government called Muzethel Childs as a witness. She attested that she had never been to HFC, had never sought a loan from HFC, and had never signed any loan documents. Finally, Rema Perry, another coconspirator, testified that she met with Ragbir at HFC and forged Sudie Smith's name to loan documents. As with the other coconspirators, Ragbir knew Perry's true identity before she signed the loan documents. Smith testified at trial that she had never discussed a loan with anyone from HFC and had never signed any documents. This testimony along with that of others is more than sufficient to support Ragbir's convictions, and the motion for a judgment of acquittal was properly denied. So, too, was the motion for a new trial. A new trial may be granted "if the interests of justice so require." Fed. R. Crim. P. 33. For the reasons above stated, the interests of justice do not so require here.

In a final effort to attack his convictions, Ragbir asserts that the references at trial to $1.5 million as HFC's loss constitutes reversible error. In support of his assertion, he relies on United States v. Beattie, 594 F.2d 1327 (9th Cir. 1979). We find Beattie inapposite. There, the two defendants, one a furniture salesman and the other a loan officer of a bank, formed a conspiracy to defraud the bank by submitting false loan applications. The actual loss from the conspirators' false loan applications was $17,000. At trial, however, the government called as a witness the bank auditor who testified that the bank's loss was $315,000. The larger figure included loans issued by the loan officer

independent of the conspiracy. In summation, the government referred to the $315,000 figure as the loss resulting from the conspiracy. The Ninth Circuit held that the references to $315,000 were prejudicial.

The facts of Beattie are, of course, quite different from those before us. Here, the only references to $1.5 million during the trial were contained in Ragbir's statements. Furthermore, the $1.5 million figure referred to the face value of the loans, not the amount of money actually lost by HFC. That figure was estimated at $400,000, which is the amount the government mentioned in its opening and closing statements. This $400,000 figure was also the amount identified in the Second Superseding Indictment. After trial but before sentencing, the parties stipulated that HFC's actual loss was more than $350,000 but less than $500,000. At no time did the government attempt to show that the loss to HFC was $1.5 million. No error occurred.

In addition to attacking his convictions, Ragbir attacks his sentence. First, he argues that the District Court improperly found that his conduct involved more than minimal planning, as defined in U.S.S.G. 2F.1.1(b)(2)(A). We review the District Court's factual finding for clear error. United States v. Yeaman, 194 F.3d 442, 456 (3d Cir. 1999). Section 2F1.1(b)(2)(A) provides for a two-point increase in the offense level if the defendant's conduct involved more than minimal planning. As the commentary explains, such planning exists "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. 1B1.1, cmt. n.1(f) (2000). Here, the District Court reasonably concluded that Ragbir's repeated processing of false loan applications constituted more than minimal planning.

Second, Ragbir maintains that the District Court incorrectly concluded that his position at HFC as an account executive was a position of trust under U.S.S.G. 3B1.3. This determination is a legal conclusion subject to plenary review. United States v. Iannone, 184 F.3d 214, 222 (3d Cir. 1999). According to the commentary to U.S.S.G. 3B1.3, a position of trust involves "professional or managerial discretion." U.S.S.G. 3B1.3, cmt. n.1 (2000). In determining whether a position involves such discretion, we consider three factors: "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in defendant vis-a-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position." United States v. Pardo, 25 F.3d 1187, 1192 (3d Cir. 1994). We have previously found that a bank teller, who processed false Western Union money orders without conducting the appropriate verification procedures, occupied a position of trust. United States v. Craddock, 993 F.2d 338, 343-44 (3d Cir. 1993).

A consideration of the above factors, particularly in light of Craddock, leaves little doubt that Ragbir held a position of trust. As a HFC account executive, Ragbir was given virtually unlimited discretion to choose which applications to pursue. If he determined that an application was viable, he was responsible for completing the application form, collecting the necessary supporting documents from the applicant, examining the applicant's credit report, and verifying that the application, documents, and report were consistent. Any major inconsistencies had to be reconciled before Ragbir could forward the application to an underwriter. The HFC underwriters in Illinois relied heavily on his recommendations when deciding to approve the applications and, with the exception of real estate loans, did not independently review the supporting documentation.

Ragbir, therefore, was particularly well-situated to perpetrate the loan fraud scheme. He willingly processed false applications referred to him by Kosch. He then knowingly filled in false information on the application forms and submitted them to underwriters without conducting the appropriate verification. Relying on his recommendations, the underwriters approved the loans. Indeed, but for his assistance, the conspiracy could not have been successful. Accordingly, the District Court correctly concluded that Ragbir violated a position of trust in a manner that significantly facilitated the conspiracy to defraud HFC.

For the foregoing reasons, we will affirm the judgment of the District Court.


TO THE CLERK OF THE COURT:
Kindly file the foregoing Opinion.

                         /s/ Maryanne Trump Barry
                              Circuit Judge
                    UNITED STATES COURT OF APPEALS
                         FOR THE THIRD CIRCUIT


                         No.   01-3745


                    UNITED STATES OF AMERICA

                              v.

                    RAVIDATH RAGBIR,
                                        Appellant
                         _____


         ON APPEAL FROM THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
                   D.C. Crim. No. 00-cr-00121-2
         District Judge:  The Honorable William G. Bassler
                         _____


             Submitted Under Third Circuit LAR 34.1(a)
                         June 7, 2002
                         _____


         Before: NYGAARD, BARRY, and MAGILL, Circuit Judges




                              JUDGMENT




      This cause came to be heard on the record from the United States District Court
for the District of New Jersey and was submitted on June 7, 2002.
      After consideration of all contentions raised by the appellant, it is
      ADJUDGED and ORDERED that the judgment of conviction and sentence be
and hereby is affirmed.  No costs.  All in accordance with the Opinion of the Court.
                              ATTEST:




                              Clerk


Dated: 7 June 2002